```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

MARIA LEONOR RICHARDS,          :
                                :
     Plaintiff,                 :
                                :
     v.                         :   CASE NO. 3:17cv2083(DFM)
                                :
NANCY A. BERRYHILL,             :
ACTING COMMISSIONER OF SOCIAL   :
SECURITY,                       :
                                :
     Defendant.                 :

## RULING AND ORDER

The plaintiff, Maria Leonor Richards, who is self-represented, brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision by the Commissioner of Social Security ("Commissioner") denying the plaintiff's applications for disability insurance benefits and supplemental security income. On February 15, 2018, the Commissioner filed the Administrative Record. (Doc. #14.) Thereafter, on February 20, 2018, the court issued a detailed scheduling order stating in part "Plaintiff shall file a motion to reverse and/or remand and a supporting memorandum of law on or before April 17, 2018. Defendant shall file a motion to affirm or a motion for voluntary remand on or before June 18, 2018." (Doc. #16.) The plaintiff did not file a motion and memorandum. Rather, on March 28, 2018, she filed various medical records. (Doc. #20.) On June 7, 2018, the defendant filed a motion to affirm the Commissioner's decision and a supporting

memorandum explaining the defendant's reasons as to why the decision should be upheld. (Doc. ##21, 21-1.) The plaintiff did not file anything in response. On February 6, 2019, the court issued an order setting forth the procedural history of the case, including the fact that the plaintiff had failed to file a motion to reverse the ALJ's decision. The court went on to explain to the plaintiff that

> [i]f the court grants the defendant's motion, the litigation will be over and the case closed. By 2/19/2019, [you] may file with the Clerk's Office an opposition to the defendant's motion, explaining why [you] believe[] the ALJ's decision was incorrect and addressing arguments the defendant made in its motion. If [you] do[] not file anything, the court will issue a decision based on the defendant's submission alone.

(Doc. #23.) Still, the plaintiff did not file anything in response. For the reasons that follow, the defendant's motion to affirm the Commissioner's decision is granted.[1]

I. <u>Administrative Proceedings</u>

In October 2014, the plaintiff applied for disability insurance benefits and supplemental security income alleging that she was disabled as of December 25, 2012 due to problems with her back, left shoulder and arm. (R. at 278.) Her applications were denied initially and upon reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ"). On August 31, 2016,

---

[1] The parties consented to the jurisdiction of a magistrate judge. <u>See</u> doc. #16.

the plaintiff testified at a hearing with the assistance of an interpreter.[2] A vocational expert also testified. On September 28, 2016, the ALJ issued an unfavorable decision. (R. at 69-77.) The plaintiff submitted records to the Appeals Council and requested review of the ALJ's decision. On October 20, 2017, the Appeals Council declined to consider the additional evidence and denied the plaintiff's request for review of the ALJ's decision review, making the ALJ's decision final. (R. at 1-4.) In December 2017, the plaintiff filed this action alleging in her complaint that she should have been awarded benefits because she has "problems in [her] lower back and in [her] left arm near [her] shoulder." (Doc. #1, Compl. at 2.)

II. Standard of Review

This court's review of the ALJ's decision is limited. "It is not [the court's] function to determine de novo whether [the plaintiff] is disabled." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). The court may reverse an ALJ's finding that a plaintiff is not disabled only if the ALJ applied incorrect legal standards or if the decision is not supported by substantial evidence. Brault v. Soc. Sec. Admin., 683 F.3d 443, 447 (2d Cir. 2012). "Substantial evidence is more than a mere scintilla. . .

---

[2] The plaintiff appeared at the hearing without counsel. The ALJ canvassed the plaintiff to make sure that she was aware she had a right to counsel and that she knowingly waived that right. (Tr. at 86-87.)

3

. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brault, 683 F.3d at 447 (quotation marks and citations omitted). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault, 683 F.3d at 448. In determining whether the ALJ's findings "are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

III. Legal Standard

The Commissioner of Social Security uses the following five-step procedure to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical

4

evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (internal alterations and citation omitted).

IV. Medical Evidence

The plaintiff was born in 1965 and was 47 years old in December 2012, her alleged date of disability. She is a high school graduate. She lives with her husband and children. She does not speak or understand English. (R. at 277.) The plaintiff worked as a hair stylist but stopped working in 2011 when she moved from New York to Connecticut. (R. at 278.)

She fell on Christmas of 2012. A CT scan of the plaintiff's cervical spine showed a congenital posterior fusion defect in C1 and mild degenerative changes in the cervical spine. (R. at 344.) On examination, she had "full range of motion" of her neck. (R. at 333.) A neurological exam showed no deficits. She had equal strength in all four extremities. When seen in January 2013, the plaintiff had full range of motion of her lumbar spine. (R. at 339.) She was "tender to palpation over the right low back

paraspinous musculature." (R. at 339.) Her neurological exam was unremarkable. She had equal strength in all four extremities. Straight leg raising was negative. She was prescribed Motrin and Flexeril.

In February 2013, the plaintiff was seen at the Charter Oak Health Center for complaints of pain in her back and right arm.[3] (R. at 392.) She had no gait disturbance. An x-ray of her right shoulder was normal. (R. at 451.) She was assessed with lumbago and shoulder joint pain and prescribed Diclofenac.[4] (R. at 391, 393.) She continued to complain of back pain and underwent physical therapy, which alleviated her symptoms. (R. at 390.)

In May 2013, an MRI of the plaintiff's lumber spine revealed "L5-S1, L4-5 very mild small disc bulge without central canal or neural foraminal stenosis." (R. at 349.) In June 2013, Dr. Kishawi recommended that the plaintiff have lumbar epidural steroid injections to address her back discomfort but the plaintiff declined. (R. at 458.) The plaintiff resumed physical therapy but discontinued it when she left the country for two months. (R. at 457.)

In August 2013, the plaintiff was seen by Dr. Walker, an orthopedist, at UConn. She complained of pain in her left hip,

---

[3]The plaintiff is right-handed. (R. at 91.)
[4]Diclofenac is a nonsteroidal anti-inflammatory medication. Dorland's Illustrated Medical Dictionary 520 (31st ed. 2008).

6

groin and lower back. (R. at 348.) Examination showed normal range of motion in her cervical spine, shoulders, and upper extremities. X-rays of the plaintiff's hips were normal. (R. at 359.) Dr. Walker observed that the plaintiff had no neurologic deficits and "[n]o signs of nerve root compression." (R. at 349.) He recommended physical therapy and opined that "her symptoms most likely will improve over time." (R. at 350.) In October 2013, the plaintiff was seen at the Charter Oak Health Center for lower back pain. (R. at 377.) Notes state that her symptoms were aggravated by heavy lifting and relieved by physical therapy. (R. at 377.)

In September 2014, the plaintiff returned to Dr. Walker at UConn (R. at 351.) She reported that the Diclofenac was helping. Her symptoms were assessed as "chronic" but "fairly well-controlled." She had no neurologic deficits. (R. at 351.) Straight leg raising was negative. (R. at 353.) Imaging studies revealed "age-related changes." (R. at 353.) She was assessed with myositis[5] and lower back pain. Dr. Walker recommended a regular exercise program such as yoga or pilates and referred her to physical and aqua therapy. (R. at 354.)

When seen at the Charter Oak Health Center on September 30, 2014, the plaintiff reported left shoulder pain. (R. at 409.)

---

[5]Myositis refers to inflammation of voluntary muscles. Dorland's Illustrated Medical Dictionary 1244 (31st ed. 2008).

7

Physical therapy was recommended. In a follow-up appointment with Dr. Walker at UConn in November 2014, the plaintiff again indicated that her lower back pain was chronic but "fairly controlled." (R. at 355.) She reported that her medication was helpful. Dr. Walker opined that "the etiology of pain was from inflammation/lumbar spondylosis." (R. at 357.) The plaintiff declined Dr. Walker's recommendation of epidural steroid injections. (R. at 358.)

After reviewing the plaintiff's medical records, Dr. Desai, a state agency medical consultant, opined that the plaintiff could frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, and could stand, walk and sit for 6 hours in an 8 hour work day. (R. at 109-112.)

X-rays of the plaintiff's left shoulder in January 2015 were normal. (R. at 471.) An MRI of the plaintiff's left shoulder showed no full-thickness rotator cuff tear; mild narrowing of the subracromial space; and mild subdeltoid bursal fluid. (R. at 475.) Physical therapy was recommended.

The plaintiff saw PA Cosenza in January and February 2015 for left shoulder pain. (R. at 472, 483-87.)

In May 2015, Dr. Connolly, a state agency medical consultant, reviewed the medical evidence and determined that the plaintiff frequently could lift and carry 10 pounds, occasionally lift and carry 20 pounds, and stand, walk and sit for 6 hours in an 8 hour work day. (R. at 128-134.)

In January 2016, the plaintiff was seen by APRN Olga Colon for complaints of back and left arm pain. (R. at 503.) APRN Colon assessed the plaintiff with arthralgia[6] of the shoulder region and lumbago. (R. at 506.) The assessment was unchanged when the plaintiff was seen in March and April. (R. at 504.)

When seen on April 21, 2016 for back pain, a musculoskeletal examination indicated no acute signs in the plaintiff's extremities and no tenderness on palpation. She had equal and full strength in her extremities, a steady gait, and no acute neurological deficits.

An April 23, 2016 MRI of the plaintiff's left shoulder showed "mild supraspinatus tendinosis with a possible superimposed linear intrasubstance 6 mm tear," "mild AC[7] joint arthritis," "mild lateral downsloping acromion with associated spurring, and moderate atrophy infraspinatus." (R. at 489-90.)

In May 2016, the plaintiff was seen for left shoulder pain by APRN Colon. (R. at 496.) Upon examination, the plaintiff had tenderness to palpation of the shoulders. (R. at 497.) APRN Colon noted decreased "[a]ctive motion" of the plaintiff's left shoulder

---

[6]Arthralgia refers to "pain in a joint." Dorland's Illustrated Medical Dictionary 152 (31st ed. 2008).
[7]The acromioclavicular joint, or AC joint, is a joint at the top of the shoulder. It is the junction between the acromion (part of the scapula that forms the highest point of the shoulder) and the clavicle. Stedman's Medical Dictionary 19 (28th ed. 2006).

9

and lumbar spine tenderness with palpation. Her assessment was arthralgia of the shoulder region and lumbago. (R. at 497.)

## V. ALJ's Decision

Following the five step evaluation process, the ALJ first found that the plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 25, 2012. (R. at 71.) At step two, the ALJ determined that the plaintiff had severe impairments of "cervical sprain, lumbar sprain, degenerative disc disease, and left shoulder arthritis." (R. at 72.) At step three, the ALJ found that the plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (R. at 72.) The ALJ next determined that the plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds; frequently balance and kneel; occasionally stoop, crouch, or crawl; occasionally reach overhead with the left upper extremity; avoid concentrated exposure to moving mechanical parts and unprotected heights. (R. at 72.)

At step 4, the ALJ determined that the plaintiff was not able to perform her past relevant work. At step 5, considering the plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ

determined that "there are jobs that exist in significant numbers of the national economy that the [plaintiff] could perform." (R. at 76.)

VI. Discussion

The defendant Commissioner argues that the court should affirm the ALJ's decision because it is free of legal error and supported by substantial evidence. Specifically, the defendant argues that: substantial evidence supports the ALJ's residual functional capacity finding; substantial evidence supports the ALJ's finding that there were jobs the plaintiff could perform; the Appeals Council did not err in its evaluation of the evidence the plaintiff submitted; and the medical evidence the plaintiff submitted to this court is not grounds for remand. Having conducted a thorough and independent review of the record, the court concludes that the ALJ's decision should be affirmed.

A. Residual Functional Capacity

Substantial evidence supports the ALJ's residual functional capacity determination. The ALJ carefully reviewed the medical evidence in determining the plaintiff's residual functional capacity. The ALJ accorded "great weight" to Dr. Desai and Dr. Connolly's opinions, who noted that the imaging of the plaintiff's back and shoulders revealed only mild findings. See 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in

Social Security disability evaluation.") The record evidence demonstrates that the plaintiff walked with a steady gait, had equal strength in all four extremities, and no weakness or numbness in her shoulder. She was treated conservatively with medication and physical therapy, which reportedly improved her symptoms.

The ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). He did just that. He weighed the record as a whole in formulating his finding as to the plaintiff's residual functional capacity and provided good reasons supported by substantial evidence for his conclusions.

B. The ALJ's Step 5 finding

Substantial evidence also supports the ALJ's finding at step 5 that the plaintiff was capable of performing jobs existing in significant numbers in the national economy.

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." Id. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the

vocational expert based his opinion . . . and accurately reflect the limitations and capabilities of the claimant involved . . . ." Id. (internal quotation marks and citations omitted).

Here, the hypothetical presented to the vocational expert tracked the ALJ's residual functional capacity assessment. (R. at 100.) Based on these limitations, the vocational expert identified jobs that the plaintiff could perform. The ALJ applied the correct legal standard in determining that the plaintiff was not disabled at step five of the sequential evaluation process, and substantial evidence supports this decision.

C. Appeals Council

The Appeals Council did not err in declining to consider the additional evidence the plaintiff submitted to it. (R. at 2.) The Appeals Council explained that it declined to consider the MRI from April 2016 and medical records from January 2016 through May 27, 2016 because that evidence was already in the record. As to records from July 2016 to December 2016, the Appeals Council concluded, after review, that the evidence "does not show a reasonable probability that it would change the outcome of the decision" and accordingly did not consider them. (R. at 2.)

The regulation governing the submission of new evidence, 20 C.F.R. § 405.401(c), provides:

> If you submit additional evidence, the Appeals Council will consider the additional evidence only where it relates to the period on or before the date of the

13

>hearing decision, and only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and
>    (1) Our action misled you;
>    (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
>    (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

"[T]his provision . . . imposes a good cause requirement for submitting evidence late." Perkins v. Berryhill, No. 3:17CV200 (MPS), 2018 WL 3344227, at *9 (D. Conn. July 9, 2018). See Orriols v. Colvin, No. 3:14cv863(SRU), 2015 WL 5613153, at *2-4 (D. Conn. Sept. 24, 2015) (discussing the appropriate legal standard for new evidence in Connecticut under 20 C.F.R. § 405.401(c)).

The records the plaintiff submitted to the Appeals Council indicate that the plaintiff had a July 18, 2016 appointment with APRN Colon at which the plaintiff complained of pain in left shoulder and back. (R. at 23.) X-rays taken on July 2016 of the plaintiff's lumbar spine were normal. (R. at 58.) At an August 30, 2016 appointment with APRN Colon, the plaintiff reported that physical therapy for her left shoulder was helping. (R. at 27.) Notes from September 2, 2016 state that the plaintiff was "feeling fine" and undergoing bloodwork. (R. at 35.) She saw APRN Colon on September 13, 2016 for a throat issue (r. at 41); on October 13, 2016 for a flu shot (r. at 46); on October 26, 2016 for a sore throat (r. at 37) and headache (r. at 50). The court does not see

14

how these records would change the outcome of the ALJ's decision. See Scott v. Berryhill, No. 3:17CV211(JAM), 2018 WL 1608807, at *8 (D. Conn. Mar. 31, 2018) (no error where there was "no indication that any of the newly supplied evidence reveals anything that [the plaintiff's doctor] did not already know before the ALJ decision was rendered.") In sum, there was no error at the Appeals Council level.

D.  Additional Evidence Submitted to the Court

The additional records the plaintiff submitted to this court (doc. #20) do not warrant a remand. The plaintiff submitted: an April 23, 2016 MRI of the plaintiff's left shoulder (doc. #20 at 405), which is already in the record. (R. at 489-90.) The plaintiff also submitted a January 9, 2018 treatment note by Dr. Selden, an orthopedist, in which the plaintiff complained of left shoulder pain. (Doc. #20 at 7.) On examination, she had a positive impingement sign, pain with overhead elevation, fair strength and no instability. Dr. Selden recommended arthroscopic surgery. The plaintiff also submitted the February 2018 report describing the arthroscopic procedure and postoperative note discussing the plaintiff's reaction to the local anesthetic, the removal of sutures, and the fact that the plaintiff should begin physical therapy. (Doc. #20 at 1-3.)

"Because the district court acts as an appellate court and not a trier of fact in social security cases, it may not consider

evidence outside of the administrative record in reviewing a claim for benefits." Bethea v. Astrue, No. 3:10-CV-744 JCH, 2011 WL 977062, at *10 (D. Conn. Mar. 17, 2011). The court may, however, "may remand a case to . . . consider additional evidence that was not included as part of the original administrative proceedings." Jean A. C. v. Berryhill, No. 5:18CV164(GLS), 2019 WL 1411055, at *3 (N.D.N.Y. Mar. 28, 2019). Such a remand is warranted only if a three-prong test is met:

> [The party seeking the remand] must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record,. . . and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . . The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. . . . . Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991)(internal quotation marks and citations omitted). "Implicit in this approach is the recognition that 'claimants ordinarily should have but one opportunity to prove entitlement to benefits[;] otherwise disability administrative proceedings would be an unending merry-go-round with no finality to administrative and judicial determinations.'" Blake v. Colvin, No. 2:14CV52(JMC), 2015 WL 3454736, at *12 (D. Vt. May 29, 2015)(quoting Tirado v. Bowen, 842 F.2d 595, 596 (2d Cir. 1988)).

16

The evidence submitted by the plaintiff does not meet this test. Neither Dr. Selden's 2018 examination notes documenting the plaintiff's left shoulder pain and recommending arthroscopy nor his notes concerning the procedure are material because they concern an evaluation of the plaintiff's condition at a point outside of the relevant timeframe. The ALJ examined the period from the initial onset date of December 2012 through August 2016, the date of his decision. Dr. Selden's reports, on the other hand, are dated January and February 2018, well outside the relevant time period. Because the new evidence provided involved examinations of the plaintiff outside of the period under consideration by the ALJ, it is not material to the disability decision. See Gibson v. Comm'r of Soc. Sec., No. 5:17CV0827(DEP), 2018 WL 2085635, at *6 (N.D.N.Y. May 3, 2018) (where proffered evidence was dated more than a year outside of the period under consideration by the ALJ, it was not material); Blake v. Colvin, No. 2:14CV52(JMC), 2015 WL 3454736, at *12 (D. Vt. May 29, 2015)("The new evidence submitted by [plaintiff] is not material, as it does not relate to the period under review."); Pearson v. Astrue, No. 1:10CV00521(MAD), 2012 WL 2012 WL 527675, at *11-12 (N.D.N.Y. Feb. 17, 2012) ("Materiality requires that the new evidence not concern a later-acquired disability or the subsequent deterioration of the previous non-disabling condition."); Guynup v. Astrue, No. 07-CV-0098, 2009 WL 2252244, at *4 (N.D.N.Y. July

28, 2009)(report was not probative of the plaintiff's residual functional capacity for the period during which benefits were denied where there was nothing in it "suggesting that the examination is retrospective" or that it relates back to the period at issue).

Even assuming the evidence could properly be considered as relevant to the plaintiff's condition during the timeframe at issue, it is not probative because it does not undermine the ALJ's decision. The notes add little to the existing record. The fact that Dr. Selden suggested arthroscopy may underscore the severity of the plaintiff's impairment, but it does not undermine the ALJ's RFC finding.

VII. Conclusion

For these reasons, the defendant's motion for an order affirming the Commissioner' decision (doc. #20) is granted. The Clerk of the Court is directed to enter judgment accordingly and close the case.

SO ORDERED this 11th day of June 2019 at Hartford, Connecticut.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge